IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:20-cv-32

| | |
|---|---|
| HARMONY HITCHNER, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) **COMPLAINT** |
| HERTZ CORPORATION, | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) |
| | ) |

COMES NOW Plaintiff Harmony Hitchner, complaining of Defendant Hertz Corporation, alleges and says the following:

## JURISDICTION

1. Plaintiff's claims for discrimination on the basis of race, religion, and national origin, retaliation, and hostile work environment arise under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq. ("Title VII").

2. Jurisdiction is proper pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, and 28 U.S.C. § 1343.

3. A substantial part of the unlawful acts alleged herein were committed within the jurisdiction of the United States District Court for the Eastern District of North Carolina.

4. This Honorable Court has personal jurisdiction over Defendant Hertz Corporation because Defendant conducts business in the State of North Carolina.

5. This Honorable Court should assume supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims are based upon the same operative facts as the discrimination claims over which this Honorable Court has

jurisdiction, and judicial economy, convenience, and fairness to the parties demand that this Honorable Court assume and exercise jurisdiction over all claims alleged herein.

6. Costs and attorney's fees may be awarded pursuant to Title VII, 42 U.S.C. § 2000e-5(k); and Fed. R. Civ. P. 54.

7. Venue is proper pursuant to 28 U.S.C. § 1931 as to Defendant because Defendant conducts business in this judicial district.

## PARTIES

8. Plaintiff is a citizen of the United States and a resident of Oak Island, North Carolina.

9. At all times relevant to this Complaint, Plaintiff was an "employee" as that term is defined by Title VII.

10. Defendant is a Delaware corporation with its principal place of business in Estero, Florida and a registered office in Raleigh, North Carolina.

11. Defendant regularly and systematically conducts business in the State of North Carolina.

12. Defendant employed more than 500 employees for each working day in more than 20 weeks during the preceding year.

13. At all times relevant to this Complaint, Defendant was an "employer" as that term is defined in Title VII.

## ADMINISTRATIVE HISTORY

14. Plaintiff has exhausted all administrative remedies available to her.

15. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission.

16. The EEOC issued a "Dismissal and Notice of Rights" on December 4, 2019. A copy of the Dismissal and Notice of Rights letter is attached hereto as Exhibit A.

17. This Complaint is being timely filed within 90 days from the date the Plaintiff received the Dismissal and Notice of Rights from the EEOC.

## FACTS

18. At all times relevant to this Complaint and beginning in February 2017, Plaintiff was an employee of the Hertz Corporation (hereinafter "Hertz").

19. At all times relevant to this Complaint, Plaintiff managed the Hertz counter located at the Cape Fear Regional Jetport (the "Jetport").

20. At all times relevant to this Complaint, the Hertz counter at the Cape Fear Regional Jetport was located inside the airport's main terminal, which was a double-wide trailer.

21. Throughout Plaintiff's employment with Hertz, she was the target of constant sexual harassment and discrimination that was either perpetrated or encouraged by the Jetport's manager, Howard W. Franklin.

22. At all times relevant to this Complaint, Plaintiff's Hertz counter was adjacent to a sitting area for airport patrons.

23. At all times relevant to this Complaint, a group of male airport patrons and employees of the Jetport would congregate at the airport sitting area for several hours on a daily basis.

24. This group of male airport patrons and employees was often referred to as the "airport bums."

25. At all times relevant to this Complaint, the airport bums, with the express consent, participation, and even encouragement of the Jetport's management, would engage in offensive conduct targeting Plaintiff.

26. This offensive conduct includes, but is not necessarily limited to, the following:

a. On or about May 1, 2017, a male employee of the Jetport stared at Plaintiff's buttocks and commented that he enjoyed watching Plaintiff. Plaintiff reported the incident to Defendant, but no corrective action was taken by Defendant.

b. On or about October 22, 2017, Howard W. Franklin told Plaintiff that "men don't get enough credit for NOT groping women" because such conduct was "innate" in men.

c. Howard W. Franklin told Plaintiff about an incident where he looked up an underage girl's skirt.

d. At some time in January 2018, members of the airport bums insisted they could stare at Plaintiff's "tits" because of Plaintiff's choice of clothing and makeup. Howard W. Franklin was present for these conversations. Plaintiff immediately asked that the inappropriate conversations stop, but they nevertheless continued for approximately 40 minutes.

e. The airport bums would frequently use ethnic and misogynistic slurs in Plaintiff's presence and with the active participation and/or knowledge of Jetport management. On one such occasion, on or around May 31, 2018, the airport bums joked about two African-American women boarding a flight at the Jetport. On another occasion, the airport bums made various comments praising Adolf Hitler.

f. On or about July 22, 2019, Plaintiff heard several male employees of the Jetport talk inappropriately about an 18-year old female community service volunteer who had recently been on site. Specifically, the employees commented on that volunteer's skirt.

    g. On or about August 16, 2019, employees of the Jetport made comments in Plaintiff's presence about requesting a lap dance from a female co-worker.

27. Plaintiff repeatedly reported the offensive conduct at the Jetport to Defendant and was in near daily contact with her supervisor Gary Bascom and District Manager Neil Wilkinson about the hostile work environment created by the Jetport management.

28. Despite being on notice of, and even acknowledging, these circumstances, Defendant took no action to prevent the offensive conduct or otherwise protect Plaintiff aside from repeatedly suggesting to Plaintiff that she "put her headphones on."

29. Instead of protecting Plaintiff, Defendant responded by retaliating against her for making her complaints.

30. In retaliation for making complaints, Defendant transferred Plaintiff from the Jetport to a position in Wilmington, North Carolina. The transfer required Plaintiff to drive an additional 30 miles each way and Defendant did not increase Plaintiff's wage or compensate her for the travel time.

31. After one month working in the Wilmington office, Plaintiff returned to the Jetport location and the hostile work environment found therein.

32. As a direct and proximate result of the conduct enabled and encouraged by Defendant, Plaintiff suffered and will continue to suffer in the future great worry, anxiety, embarrassment, and mental and emotional distress.

33. In December 2019, Plaintiff ultimately resigned from her position with Defendant as a result of the intolerable discrimination occurring on a daily basis.

34. As a direct and proximate result of this conduct, Plaintiff was forced to resign her position with Hertz Corporation, resulting in a loss of earnings and benefits in excess of $25,000.00.

## FIRST CLAIM: HOSTILE WORK ENVIRONMENT

35. The allegations contained in Paragraphs 1 through 34 above are incorporated herein by reference as if fully set forth.

36. Defendant had an affirmative duty to maintain a workplace that was free of harassment based on Plaintiff's gender.

37. As alleged above, at all times relevant to this action, Plaintiff was employed with Defendant, an "employer" within the meaning of Title VII.

38. As alleged above, the Jetport's customers' and employees' constant harassment of Plaintiff during the entirety of Plaintiff's employment with Defendant were so severe that they altered the terms of Plaintiff's employment with Defendant and, accordingly, constituted a hostile work environment for the Plaintiff.

39. As a direct and proximate result of the hostile work environment created, nurtured, and permitted by Defendant, Plaintiff suffered and continues to suffer economic losses, mental anguish, pain and suffering, and other nonpecuniary losses.

40. Defendant's violations of Title VII, as alleged herein, were intentional, willful, knowing and malicious, or with reckless indifference to Plaintiff's federally protected rights.

41. Accordingly, Plaintiff is entitled to recover punitive damages from Defendant.

42. Plaintiff is entitled to recover her reasonable attorneys' fees and costs.

## SECOND CLAIM: WRONGFUL DISCHARGE

43. The allegations contained in Paragraphs 1 through 42 above are incorporated herein by reference as if fully set forth.

44. The constructive discharge of Plaintiff from her position with Defendant was in violation of the public policy of the State of North Carolina, specifically the North Carolina Equal

Employment Practices Act, N.C.G.S. 143-422.2, *et seq.*, which makes discrimination on account of sex an unlawful employment practice in North Carolina.

45. Plaintiff was constructively discharged from her position with Defendant because of her gender.

46. Plaintiff is entitled to recover from Defendant her compensatory damages as provided by North Carolina law, including, but not limited to, back pay, front pay, benefits of employment, inconvenience, mental suffering, loss of enjoyment of life, and humiliation.

47. Defendant's conduct as set forth herein was malicious and/or willful and wanton, thereby justifying an award of punitive damages.

48. Managers of Defendant either participated in or condoned the malicious and/or willful and wanton conduct, thereby justifying punitive damages against the Defendant, as set forth in N.C.G.S. 1D-15.

## THIRD CLAIM: RETALIATION

49. The allegations contained in Paragraphs 1 through 48 above are incorporated herein by reference as if fully set forth.

50. Title VII prohibits retaliation against employees who oppose discrimination prohibited by Title VII.

51. Plaintiff engaged in protected activity within the meaning of Title VII by complaining and reporting the Jetport management and employees' pervasive and severe harassment based upon Plaintiff's gender.

52. Plaintiff was relocated from her position with Defendant to Wilmington, North Carolina in retaliation for her prior protected activity in resisting the hostile work environment created, maintained, and permitted by Defendant.

53. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering, and other nonpecuniary losses.

54. Defendant's violations of Title VII, as alleged herein, were intentional, willful, knowing and malicious, or with reckless indifference to Plaintiff's federally protected rights.

55. Accordingly, Plaintiff is entitled to recover punitive damages from Defendant.

56. Plaintiff is entitled to recover her reasonable attorneys' fees and costs.

**FOURTH CLAIM: NEGLIGENT SUPERVISION AND RETENTION**

57. The allegations contained in Paragraphs 1 through 56 above are incorporated herein by reference as if fully set forth.

58. Defendant owed Plaintiff a duty of care to maintain a safe and secure work environment, free from sexual discrimination, sexual harassment, misconduct, and intimidation.

59. Defendant, through its agents, owed Plaintiff a duty of care to prevent the continued harassment of Plaintiff, to investigate the harassment as it became known to management employees, and to take appropriate action in order to prevent the ongoing harassment.

60. Defendant was negligent in one or more of the following respects:

    a. By failing to implement and enforce an effective sexual harassment policy.

    b. By failing to train supervisors and management employees that sexual harassment would not be tolerated in the workplace.

    c. By failing to control or eliminate the atmosphere of sexual harassment in the Jetport and instead tolerating an atmosphere that was hostile to women.

    d. By failing to halt the demeaning and abusive behavior directed at Plaintiff.

8

Case 7:20-cv-00032-D   Document 1   Filed 02/20/20   Page 8 of 10

61. The negligence of Defendant proximately caused Plaintiff emotional distress and mental suffering.

62. The negligence of Defendant proximately caused Plaintiff to be constructively discharged from the company.

63. As a direct and proximate result of Defendant's negligence, Plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering, and other nonpecuniary losses.

64. Defendant's negligence was malicious and/or willful and wanton, thus justifying an award of punitive damages.

65. Managers of Defendant either participated in or condoned the malicious and/or willful and wanton conduct, thereby justifying punitive damages against the Defendant, as set forth in N.C.G.S. 1D-15.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff hereby requests the following relief:

1. That all issues of fact raised by this pleading be tried by a jury;
2. That she recover of Defendant compensatory damages in an amount to be proved at trial;
3. That she recover punitive damages in an amount to be determined by the jury;
4. That she be awarded reasonable attorneys' fees and costs;
5. That she recover pre-judgment and post-judgment interest on all amounts awarded herein;
6. That she recover all other relief which the court deems just and proper.

[SIGNATURE PAGE TO FOLLOW]

This the 20th day of February, 2020.

                                OSBORN GAMBALE BECKLEY & BUDD PLLC

BY: _/s/ Joseph D. Budd_____
      JOSEPH D. BUDD
      N.C. Bar No. 44263
      MATTHEW R. GAMBALE
      N.C. Bar No. 43359
      410 North Boylan Ave.
      Raleigh, North Carolina 27603
      joe@counselcarolina.com
      matt@counselcarolina.com
      919.373.6422
      Facsimile: 919.578.3733